J-S16031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF BABY GIRL E. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: R.F., FATHER | No. 1554 MDA 2014 |

Appeal from the Decree August 11, 2014
In the Court of Common Pleas of Centre County
Orphans' Court at No(s): 3932-2013

BEFORE:  PANELLA, J., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                          **FILED APRIL 10, 2015**

R.F. ("Putative Father") appeals from the decree entered August 11, 2014, in the Court of Common Pleas of Centre County, granting the petition of W.R.S. and L.A.S. ("Prospective Adoptive Mother," individually, or "Prospective Adoptive Parents," collectively) to involuntarily terminate Putative Father's parental rights to his daughter, Baby Girl E. ("Child"), born in November 2013. Concomitant with this appeal, counsel has filed an **Anders**[1] brief and a petition seeking leave to withdraw from representation. The issue identified by counsel in this appeal is as follows:  "Whether the [orphans'] court committed an abuse of discretion or error of law when it concluded that grounds for termination had been established under 23

---

[1] **Anders v. California**, 386 U.S. 738 (1967).

Pa.C.S.A. § 2511(a)(6)?" **Anders** Brief, at 5.  In addition, the **Anders** brief lists and addresses ten issues raised in Putative Father's Pa.R.A.P. 1925(b) statement.  Based upon the following, we affirm and grant the petition for leave to withdraw as counsel.

The orphans' court summarized the facts of this case as follows:

> In September 2013, Mother, then 14 years of age learned that she was pregnant. A decision was made to offer the child for adoption. The child was born on November [], 2013, and [Putative Father] was **not** named as the Father on the birth certificate.
>
> [Putative Father[2]] has refused to participate in, or cooperate with, the adoption proceeding, and has maintained that he is not the Father of the child. A hearing to terminate [Putative Father's] paternal rights was scheduled for May 13, 2014, but adjourned without testimony, at [Putative Father's] request, to allow [Putative Father] to secure counsel. Counsel was appointed to represent [Putative Father].
>
> A reconvened hearing was held on August 11, 2014, to consider terminating [Putative Father's] parental rights. At that hearing, [Putative Father] testified that he had never had sexual relations with [M]other, and that it was impossible that he is the Father. The Court found [Putative Father's] testimony to be credible, and as such found that he had no parental rights, and therefore, terminated his non-existent parental rights.

_____

[2] Putative Father, at the time of the termination hearing, was a high school junior.  **See** N.T., 8/11/2014 (Termination Hearing), at 18.

- 2 -

Amended Opinion in Response to Matters Complained of on Appeal, 10/2/2014, at 1–2 (emphasis in original).[3]

To this summary, we add that, on December 11, 2013, adoption proceedings were initiated by Prospective Adoptive Parents by the filing of a report of intention to adopt. On March 10, 2014, Prospective Adoptive Parents filed: (1) a petition for the involuntary termination of the parental rights of Putative Father, (2) a petition to confirm Mother's consent to adoption, and (3) a petition for adoption. Thereafter, the court appointed Justin Miller, Esquire, to represent Putative Father, and Elizabeth Hunt, Esquire, as Guardian *Ad Litem* for Child.[4] On August 11, 2014, the court held a termination hearing and a separate adoption hearing. That same day, the orphans' court entered three decrees: (1) a preliminary decree involuntarily terminating the parental rights of Putative Father, (2) a preliminary decree confirming the consent of Mother to the adoption of Child, and terminating her parental rights, and (3) a final decree of adoption. Thereafter, Putative Father filed this timely appeal from the decree terminating his parental rights.

_____

[3] We note that at the termination hearing, Putative Father denied paternity, and, in the alternative, took the position that if he was the father of Child, his rights should not be terminated. *See* N.T., 8/11/2014, at 35, 38–40, 85. We further note Putative Father did not undergo DNA testing. Additionally, Putative Father did not consent to voluntary relinquishment of his parental rights.

[4] Mother was represented by Bobbie Rabuck, Esquire.

Initially, we address the ***Anders*** brief and petition seeking permission to withdraw. The principles that guide our review are as follows:

> When counsel files an ***Anders*** brief, this Court may not review the merits without first addressing counsel's request to withdraw. ***Commonwealth v. Washington***, 2013 PA Super 51, 63 A.3d 797, 800 (Pa. Super. 2013). In ***In re V.E.***, 417 Pa. Super. 68, 611 A.2d 1267 (Pa. Super. 1992), this Court extended the ***Anders*** principles to appeals involving the termination of parental rights. ***Id.*** at 1275. In these cases, counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating parental rights may petition this Court for leave to withdraw representation and submit an ***Anders*** brief. ***In re S.M.B.***, 2004 PA Super 329, 856 A.2d 1235, 1237 (Pa. Super. 2004). We review counsel's ***Anders*** brief for compliance with the requirements set forth by our Supreme Court in ***Commonwealth v. Santiago***, 602 Pa. 159, 978 A.2d 349 (Pa. 2009).

> > [W]e hold that in the ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

> ***Id.*** at 361.

> > Additionally, pursuant to ***Commonwealth v. Millisock***, 2005 PA Super 147, 873 A.2d 748 (Pa. Super. 2005) and its progeny, "[c]ounsel also must provide a copy of the ***Anders*** brief to his client. Attending the brief must be a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the ***Anders*** brief."

> ***Commonwealth v. Orellana***, 2014 PA Super 33, 86 A.3d 877, 880 (Pa. Super. 2014) (internal quotation marks and citation omitted). "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." ***Commonwealth v. Goodwin***, 2007 PA Super 180, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*), *quoting* ***Commonwealth v. Wright***, 2004 PA Super 87, 846 A.2d 730, 736 (Pa. Super. 2004).

***In re X.J.***, 105 A.3d 1, 3–4 (Pa. Super. 2014).

Here, we conclude that counsel has complied with the requirements as set forth above. Counsel has provided Putative Father with a copy of the ***Anders*** brief and indicated in his correspondence enclosing the brief that Putative Father may proceed *pro se* or with private counsel. In his brief, counsel refers to facts of record that might arguably support Putative Father's appeal and sets forth his conclusion that the appeal is frivolous and the reasons for this conclusion. Accordingly, we undertake our independent evaluation of the record to determine whether Putative Father's appeal is wholly frivolous.[5]

Our review of an order granting a petition for involuntary termination of parental rights is well settled:

---

[5] We note a typographical error in the ***Anders*** brief, which states: "The relevant four-month period was … between December 10, 2013, and March 10, 2014." ***Anders*** Brief at 14. The correct four-month period is from November 10, 2013 to March 10, 2014. This typographical error does not affect our review.

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.; R.I.S.*, [36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.; see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

The termination of parental rights involves a bifurcated analysis, governed by Section 2511 of the Adoption Act. This Court has explained:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory

grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007), *citing* 23 Pa.C.S. § 2511.

As stated above, the burden is on the party seeking termination, here the Prospective Adoptive Parents, to establish the statutory grounds for termination by clear and convincing evidence. *In re C.M.S.*, 832 A.2d 457, 461 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004).

In the present case, Prospective Adoptive Parents sought to terminate Putative Father's parental rights under Section 2511(a)(6) and (b):

**§ 2511. Grounds for involuntary termination**

**(a)** **General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(6) In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child.

\* \* \*

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as

> inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(6), (b).

The record shows that Prospective Adoptive Parents demonstrated by clear and convincing evidence the requirements of Section 2511(a)(6). Specifically,

(1)     Child was born in November, 2013, and the petition at issue was filed more than four months later, on March 10, 2014.

(2)     Mother stated Putative Father should have known she had given birth when she was not in school. *See id.* at 10–11.[6] Putative Father testified he was aware his mother called the hospital, and further stated "[w]hen she called, [Child] wasn't born yet." *See id.* at 39.

(3)     Both Putative Father and Mother testified to their respective addresses, which are not the same. Putative Father lives

---

[6] Mother testified Putative Father became aware of her pregnancy when his mother came to her house, and "we told her, and she told him." N.T., 8/11/2014 (Termination Hearing), at 7. Mother stated "[Putative Father's mother] heard rumors about me being pregnant and him being the father, and she wanted to get everything out in the open." *Id.* at 8.

Mother testified she did not directly tell Putative Father she had given birth because he told her that he did not want anything to do with Child. *See id.* at 14–15. On November 25, 2013, Prospective Adoptive Parents' attorney contacted Putative Father regarding Child's birth, and requested he sign a consent to adoption form. *See id.* at 22–24; Petitioner's Exhibit 1 (Letter from Denise Bierly, Esquire to Putative father, dated 11/25/2013).

with his father, stepmother, and brother. Mother lives with her mother, stepfather, and brother. ***See id.*** at 4, 8, 17 and 19.

(4)       Mother testified that she is not married. ***See id.*** at 5.

(5)       During the applicable four month period, from November 10, 2013, to March 10, 2014, Putative Father denied paternity, and did not try to find out any information about Child. ***See id.*** at 26–27, 37.

(6)       During the same applicable four month period, Putative Father did not pay any child support or make purchases of diapers or formula for Child. ***See id.*** at 30.

Therefore, we conclude the record supports the court's determination that Prospective Adoptive Parents proved grounds for termination of Putative Father's parental rights pursuant to Section 2511(a)(6).

Moreover, we have examined the issues listed in the ***Anders*** brief that were raised by Putative Father in the concise statement, which are as follows:

1. The court erred and abused its discretion in terminating [Putative Father's] parental rights.

2. The court did not properly consider [Putative Father's] ability to support the child with his own employment and the financial and other support of his parents.

3. [Putative Father] was repeatedly denied a paternity test.

4. [Putative Father] was never told anything regarding the child, including but not limited to the date of birth, his right to contest the adoption, the opportunity to financially support this child, or the opportunity to be present at the birth.

5. The biological mother named several men as the father prior to the initiation of adoption proceedings, rendering [Putative

Father] incapable of knowing whether the child was alleged to be his or not until court papers were filed.

6. When [Putative Father] first spoke with the biological mother regarding her pregnancy, he was informed she was keeping the child and that he would be able to see the child and would be able to have a paternity test performed once the child was born. None of these things occurred.

7. The termination of [Putative Father's] parental rights will be part of his permanent civil record, and will hamper him in any proceedings relative to any other children he may father in the future.

8. The biological mother informed the community — including the high school both parents attend — that she was not pregnant and instead had a tumor.

9. The biological mother took part in an illegal adoption process, accepting payment for putting the child up for adoption.

10. [Putative Father's] attorney refused to call any witnesses who could have testified to the biological mother's involvement in an illegal adoption.

Putative Father's Pa.R.A.P. 1925(b) statement.

With regard to the first issue listed in Putative Father's concise statement, that the trial court abused its discretion in terminating his parental rights, we have already found that all of the requirements were met for termination pursuant to Section 2511(a)(6). As to the second issue, Putative Father's ability to support the child is not a factor to be considered under Section 2511(a)(6). The third issue, that Putative Father was denied a paternity test, has no support in the record. Rather, the record reflects that Putative Father was advised by Prospective Adoptive Parents' attorney how to set up a DNA test, but he did not do so prior to the termination

hearing.[7]  ***See*** N.T., 8/11/2014 (Termination Hearing), at 27–30; Petitioner's Exhibit 2 (Letter from Denise M. Bierly, Esquire, to Putative Father, dated 12/31/2013).

In issues four through six, Putative Father claims that he was not told anything regarding his rights to Child, that Mother named several potential fathers, and that Mother originally stated she was keeping Child.  However, our review reveals these claims are not supported by the record.  Next, Putative Father's seventh issue, that this termination will be part of his permanent civil record, is not a valid consideration under Section 2511(a)(6), and would only be relevant in any potential dependency proceeding against Putative Father as it relates to a subsequent child.  ***See*** 42 Pa.C.S. § 6351(3).  Furthermore, Putative Father's eighth issue — that Mother said she was not pregnant and had a tumor — has no bearing on this case since Putative Father learned of Mother's pregnancy.  Finally, Putative Father's last two allegations of Mother's involvement in an illegal adoption have nothing to do with the grounds for the termination of Putative Father's parental rights.  Accordingly, these arguments regarding Section 2511(a)(6) warrant no relief.

Once the statutory requirement for involuntary termination of parental rights has been established under subsection (a), the court must consider

---

[7] At the termination hearing, Putative Father testified he had "just set up [a DNA test] today."  N.T., 8/11/2014 (Termination Hearing), at 30.

whether the child's needs and welfare will be met by termination pursuant to subsection (b). *In re D.W.,* 856 A.2d 1231, 1234 (Pa. Super. 2004).

Here, Putative Father has never met Child and has no bond with her. At the August 11, 2014, termination hearing, Mother testified that she had an on-going relationship with Prospective Adoptive Parents, and that it was "a very nice relationship." N.T., 8/11/2014 (Termination Hearing), at 12. Mother stated she knew she "pick[ed] a good family" for Child.[8] *Id.* Putative Father, as discussed above, denied paternity. Asked by Prospective Adoptive Parents' attorney if he had "tried to reach out to [Mother] or anyone for information about the child," he responded, "Not that I know of." *Id.* at 37. Asked by the guardian *ad litem* what he would have to offer Child, Putative Father answered, "If there was a relationship, I don't know." *Id.* at 40.

Prospective Adoptive Mother testified that she and her husband have no other children, have parented Child since Child's discharge from the hospital on November 10, 2013, and that Child has grown attached to them and their families. Prospective Adoptive Mother further stated she and her husband had entered into a post-adoption contract with Child's mother and they had also extended the offer of a post-adoption contract to Putative Father. She explained that she and her husband had offered the post-

_____

[8] Mother met with Prospective Adoptive Parents before she agreed to allow them to adopt Child. N.T., 8/11/2014 (Termination Hearing), at 46.

adoption contracts because they were "looking out for the best interest for [Child]." *Id.* at 56. Prospective Adoptive Mother testified that she and her husband were financially stable. She stated that she and husband "loved [Child] with all our heart." *Id.* at 53.

In addition, Theresa Guaglianone, the adoption program manager for Children's Aid Society, who performed the home study for adoption, and a post placement visit and report regarding Prospective Adoptive Parents, testified that Child was very attached to them, was very well cared for, was loved and nurtured, and had flourished in their care. *See id*. at 59–60. She recommended that the adoption be finalized with Prospective Adoptive Parents. *See id*. at 60.

Here, the orphans' court determined that "the standards of Section 2511, Subsection 6, have been met, and that it's in the best interest of the child to have parental rights terminated and for the child to be available for adoption by [Prospective Adoptive Parents]." N.T., 8/11/2014 (Termination Hearing), at 98. After a careful review of the record, we find there is competent evidence to support the court's decision to terminate Putative Father's parental rights pursuant to § 2511(a)(6) and (b), and that the appeal is frivolous.

This Court has conducted an independent investigation of the certified record on appeal. In so doing, we found no potential nonfrivolous issue that could properly be asserted on appeal. Accordingly, we affirm the orphans'

court's decree terminating Putative Father's parental rights to Child, and grant Putative Father's counsel permission to withdraw.

Decree affirmed. Petition for leave to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2015